IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SHARON WILT,
     Individually, and on behalf of a class
     of similarly-situated persons,

          Plaintiff,

v.

HOUSEHOLD LIFE INSURANCE      CIVIL ACTION NO.   2:14-cv-31400
COMPANY,

     Defendant/Third-Party Plaintiff,

v.

BENEFICIAL WEST VIRGINIA, INC.

       Third-Party Defendant.

MEMORANDUM OPINION AND ORDER

Plaintiff Sharon Wilt brings this action against Defendant Household Life Insurance Company ("Household") alleging several causes of action arising out of a credit disability insurance policy purchased from Household and the number of monthly loan payments the insurance would cover should Plaintiff become disabled.   Before the Court is Household's Motion to Dismiss.   (ECF No. 3.)   For the reasons discussed below, the motion is **GRANTED**.

*I.   BACKGROUND*

This action arises out of a complaint brought by Plaintiff in the Circuit Court of Kanawha County, West Virginia.   (ECF No. 3-1 at 12–18.)   According to the complaint, Ms. Wilt

1

purchased a credit disability insurance policy from Household on February 9, 2007, in conjunction with a mortgage loan from another company.  (*Id.* at 13, ¶ 1; 14, ¶ 6.)  Plaintiff alleges that the sales representative who sold her the policy told her that "the credit disability policy would pay her mortgage for a period of up to 180 months" if she became disabled during the mortgage loan's term.  (*Id.* at 13, ¶ 2.)  After making several years' worth of monthly mortgage payments, Ms. Wilt became disabled, which led Household to approve her disability claim in April 2012.  (*Id.* ¶ 3; 14, ¶ 11.)  Her loan payments were then paid through the policy from Household.  (*Id.* at 14, ¶ 11.)  Household sent Plaintiff a letter on July 26, 2013, providing that "her benefits would terminate on April 24, 2014, because she had reached 'the end of the 24-month benefit period.'" (*Id.* ¶ 12.)  Indeed, Household sent a second letter on April 29, 2014, advising Ms. Wilt that the 24-month period ended and her benefits had ceased.  (*Id.* ¶ 13.)  Plaintiff claims that she only received two documents upon signing for the insurance policy: the "Application for Insurance" and the "Optional Credit Insurance Policy."  (*Id.* at 14–15, ¶¶ 15–17.)  Ms. Wilt alleges that the "Application for Insurance" does not mention the 24-month "Critical Period" while the "Optional Credit Insurance Disclosure" states that her insurance certificate "may provide a Critical Period Disability benefit" without defining what or how long the "Critical Period" is.  (*Id.* at 15, ¶¶ 17–18.)  Thus, she claims that she remained under the impression until the July 26, 2013, letter that her monthly loan payments would be covered under the disability insurance policy for up to 180 months.  (*See id.* at 14, ¶ 12.)

Plaintiff contends that the deception carried out by Household generates the following causes of action: 1) common law breach of contract, 2) violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), 3) violation of the West Virginia Unfair Trade Practices

Act ("WVUTPA"), 4) failure to disclose in violation of W. Va. Code R. § 114-14-4.1, 5) common law fraud and misrepresentation, and 6) common law first-party insurance bad faith.   (ECF No. 3-1 at 16–19, ¶¶ 25–49.)   She seeks several remedies: an injunction, a civil penalty for statutory violations, actual and compensatory damages, punitive damages, reasonable attorneys' fees and costs, pre- and post-judgment interest, and all other relief deemed appropriate.   (*Id.* at 19, ¶¶ 1–7.)

After Plaintiff filed her complaint, Household removed the case to this Court on December 31, 2014, pursuant to 28 U.S.C. § 1332(a), (d).   (ECF No. 1 at 2, ¶¶ 3–4.)   On April 17, 2015, Household filed a third-party complaint against Third-Party Defendant, Beneficial West Virginia, Inc. ("Beneficial"), asserting implied indemnification.   (*See* ECF No. 19.)

Household filed this motion to dismiss and memorandum in support of its motion on January 7, 2015.   (*See* ECF No. 3; ECF No. 4.)   The motion argues that all of Plaintiff's claims should be dismissed as a matter of law.   Plaintiff responded to Household's motion to dismiss on February 4, 2015, (*see* ECF No. 7), arguing that her claims are sufficiently pled.   (*See id.* at 10–16.)   Household filed its reply memorandum in support of its motion to dismiss on February 17, 2015.   (*See* ECF No. 8.)   The Court stayed the action on September 16, 2015, until further order. (*See* ECF No. 53.)   The motion to dismiss is fully briefed and ripe for adjudication.

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).   The rule requires the plaintiff to allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim.   *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 554–55 (2007).   A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, and the factual allegations must be taken as true and construed in the light most favorable to the plaintiff.   *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).   Consequently, a motion to dismiss should be granted only if, after accepting all well-pleaded allegations contained in the complaint as true, the plaintiff fails to allege enough facts to state a cognizable legal claim that is plausible on its face.   *Twombly*, 550 U.S. at 570.   "Factual allegations must be enough to raise a right to relief above the speculative level[,]" and if a plaintiff does not "nudge" his claim "across the line from conceivable to plausible[,]" then the complaint should be dismissed.   *Id.* at 555, 570.   "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition."   *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001) (citing *DM Research v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).

### III.   DISCUSSION

Plaintiff's complaint alleges six claims for relief.   Household attacks all six counts substantively in its motion to dismiss before arguing that counts two, three, and six, are barred by the statute of limitations.   (*See generally* ECF No. 4.)

#### A.   Count One: Breach of Contract

Household's motion states that the insurance policy to which Plaintiff's complaint refers, (*see* ECF No. 3-1 at 15, ¶ 17), unambiguously provides information referencing and explaining the Critical Period.   (*See* ECF No. 4 at 2.)   Household contends that this "negates all of Plaintiff's claims as a matter of law, including her breach of contract claim, because each claim rests on the flawed premise that the policy pays beyond the 24-month Critical Period . . . ."   (*Id.*)

4

Under West Virginia law, an insured person "may file a breach of contract claim to recover under the terms of the policy . . . ."  *See Feldman Prod., Inc. v. Indus. Risk Insurers*, No. 3:09-0481, 2011 WL 4543966, at *6 (S.D.W. Va. Sept. 29, 2011).   A plaintiff claiming a breach of contract must prove the formation of a contract, a breach of the terms of that contract, and resulting damages.  *See Sneberger v. Morrison*, 776 S.E.2d 156, 171 (W. Va. 2015).   Specifically, the plaintiff must prove the following elements by a preponderance of the evidence: 1) the existence of a valid, enforceable contract; 2) that the plaintiff has performed under the contract; 3) that the defendant has breached or violated its duties or obligations under the contract; and 4) that the plaintiff has been injured as a result.   *See Gen. Elec. Capital Corp. v. Bishop*, No. 1:11-CV-00315, 2012 WL 6202758, at *4 (S.D.W. Va. Dec. 12, 2012) (citing *Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp., Inc.*, No. 2:09-cv-1278, 2011 WL 3022239, at *10 (S.D.W. Va. July 22, 2011) (internal citations omitted)).   *See also Remsberg v. Docupak*, No. 3:12-CV-00315, 2012 WL 6202758, at *6 (N.D.W. Va. Feb. 27, 2013) (citing *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009)).   Elements one and two are undisputed.   (*See* ECF No. 3-1 at 16, ¶¶ 25–27; ECF No. 4 at 6–7.)   Rather, Household's challenge relates to elements three and four that it supposedly breached or violated its duties or obligations under the contract and that Plaintiff suffered monetary damages as a result.   (*See* ECF No. 4 at 6–10.)

"[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] plaintiffs do not challenge its authenticity.'"   *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190

5

F.3d 609, 618 (4th Cir. 1999)).   Consideration of these documents at the 12(b)(6) stage is appropriate and comports with the policy rationale allowing for consideration of these types of documents in a 12(b)(6) analysis: "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'"  *Id.* (quoting *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

In *Johnson v. Sprint Solutions, Inc.*, the plaintiff alleged that the disputed contract was comprised only of those documents given to her at the time she signed the agreement.  *See* 357 Fed. App'x 561, 563 (4th Cir. 2009).   Sprint attached the company's terms and conditions as an exhibit to its motion to dismiss despite Johnson's claim that the terms and conditions were not part of the contract because they were not delivered at the time of the agreement's signing.[1]  *See id.* The Fourth Circuit accepted the district court's conclusion that the terms and conditions comprised part of her contract with Sprint and should be considered when deciding Sprint's motion to dismiss. *See id.*   Once the terms and conditions were taken into consideration with the rest of the contract's documents, the court affirmed the lower court's judgment that the contract entitled her to no relief. *Id.* at 564.

---

[1] Johnson alleged in her complaint that the contract included "a PCS Advantage Agreement, the PCS Service Plans Guide and '[a]ny other printed material made available to the FF Subscriber, which includes a Sprint PCS Coverage Guide, which includes maps depicting the Home Area.'"   357 Fed. App'x at 563.   Her complaint also stated that "Sprint's Terms and Conditions did not comprise a part of the Contract because Sprint did not deliver them at the time Johnson signed the PCS Advantage Agreement."   *Id.*   Above her signature on the PCS Advantage Agreement, the form stated: "By signing below . . . (ii) agree that you have read and agreed to all terms of this Agreement, including the requirements of your PCS Service Plan *and the most recent [Terms and Conditions]* . . . ."   *Id.* n.2 (emphasis added).

Ms. Wilt states in her complaint that the credit disability insurance at issue is described in five documents,[2] but she claims only to have received the "Application for Insurance" and the "Optional Credit Insurance Disclosure" the day she applied for the insurance.   (*See* ECF No. 3-1 at 14–15, ¶¶ 15–16.)   She argues that the contract did not include a limited 24-month benefit period because the two documents she was provided at closing did not contain provisions stating this.   (*See id.* at 14, ¶ 14; 15 ¶¶ 17–18.)   Rather, she believed the contract's benefit would last 180 months because "[t]he 'Optional Credit Insurance Disclosure' discloses that the term of the insurance is 180 months . . . ."   (*Id.* at 15, ¶ 17.)

Following the Fourth Circuit in *American Chiropractic Ass'n* and *Johnson*, the contract will be construed as encompassing all five documents Ms. Wilt names in her complaint, (s*ee id.* at 14–15, ¶ 15), and the language's plain meaning will be given full effect where the provisions are "clear and unambiguous."   *See Payne*, 466 S.E.2d at 166.   The "Group Fixed Monthly Premium Life and/or Disability Insurance Policy," which lays out the specific terms of the disability insurance and its benefits, provides that the "Critical Period is the number of months for which monthly benefits are payable during one period of disability" and that "[p]ayment of Monthly Disability Benefits will stop on the earliest of: (i) the date the Insured Debtor is no longer disabled, (ii) the date the Insured Debtor receives the number of monthly benefits in the Critical Period, or (iii) the date this insurance ends . . . ."   (ECF No. 3-3 at 8–9.)   Schedule A to the policy is attached to it and lays out in clear language: "Critical Period: **24 months**."   (*See id.* at 13 (emphasis in original)).   The "Optional Credit Insurance Disclosure," which she admitted to receiving and

---

[2] The documents associated with the insurance include the "Application for Insurance," "Optional Credit Insurance Disclosure," "Notice of Proposed Group Disability Insurance," "Certificate of Insurance," and the "Group Fixed Monthly Premium Life and/or Disability Insurance Policy."

signed at the closing, states, "The Critical Period is the number of months for which monthly benefits are payable during any period of disability . . . [T]his is a limited benefit, which may not be enough to pay off your loan."   (ECF No. 3-5 at 2-4.)

Further, while Ms. Wilt claims that she did not receive the "Notice of Proposed Group Disability Insurance" at the closing on February 9, 2007, (*see* ECF No. 3-1 at 14–15, ¶¶ 6, 16), that document, which she signed and dated on February 9, 2007, states plainly, "Critical Period: 24 months . . . Critical Period is the number of months benefits are payable during one period of disability."[3]   Additionally, the "Certificate of Insurance" mailed to her home as soon as her application was approved provides on the first page, "**Critical Period: 24 Months . . . **CRITICAL PERIOD DISABILITY PAYS A LIMITED BENEFIT WHICH MAY NOT BE ENOUGH TO PAY OFF YOUR ACCOUNT."   (ECF No. 3-7 at 6.)   Despite the claim that the documents Ms. Wilt received at the closing did not contain information about the 24-month Critical Period, the contract's documents, considered as a whole, clearly provide a maximum benefit period of 24 months during one disability period.   *See Johnson*, 357 Fed. App'x at 563–64.   Nothing in the contract's other documents suggests that the benefit period was to last longer than 24 months.

Ms. Wilt's claim for benefits under the policy was approved in April 2012, and Household began covering her mortgage loan payments immediately.   (ECF No. 3-1 at 14, ¶¶ 10–11.)   It is undisputed that Household sent Plaintiff a letter on July 26, 2013, that her benefits would terminate on April 24, 2014, in accordance with the 24-month benefit period.   (*Id.* ¶ 12.)   Indeed, on April

---

[3] Plaintiff refers to the "Notice of Proposed Group Disability Insurance" in her complaint without challenging its authenticity, (*see* ECF No. 3-1 at 14–15, ¶ 15), and Defendant attached the document to its motion to dismiss.   Thus, the Court may consider it at the 12(b)(6) stage.   *See Am. Chiropractic Ass'n*, 367 F.3d at 234.

29, 2014, Ms. Wilt received a confirmation letter that her benefits "reached the end of a 24-month period" and expired.  (*Id.* ¶ 13.)  Household made 24 months' worth of payments in accordance with the disability insurance contract.  Therefore, it did not breach its contract with Ms. Wilt regardless of her claim or belief that she should receive benefits for the insurance term's "full 180 month period."[4]  (*See id.* at 14, ¶ 12.)

Plaintiff cannot satisfy elements three and four of her breach of contract claim that Household breached its contractual duties and, consequently, that she was injured as a result. Thus, Plaintiff has not pled sufficient facts to state a cause of action for breach of contract, and the Court **DISMISSES** count one.

### B.  Count Two: WVCCPA

Household contends that the WVCCPA cannot apply to an insurance company like itself,[5] (*see* ECF No. 4 at 2–4), and that Ms. Wilt fails to state a recognized cause of action.

The WVCCPA is a "comprehensive protection law" that restricts the ways by which debt collectors may try and collect debts."  *See Gray v. Chase Bank USA, N.A.*, No. 5:10-cv-00979, 2011 WL 4716232, at *4 (S.D.W. Va. Oct. 7, 2011) (quoting *Countryman v. NCO Fin. Sys., Inc.*, No. 5:09-cv-02288, 2009 WL 1506720, at *2 (S.D.W. Va. May 27, 2009) (internal citation omitted)).  The WVCCPA provides that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims . . . ."  W. Va. Code § 46A-2-127.  It applies if a West Virginia consumer is "induced to enter into . . . a consumer loan

---

[4] The contract's documents, including the "Application for Insurance" and "Optional Credit Insurance Disclosure" Ms. Wilt admits to receiving at the closing, (*see* ECF No. 3-1 at 15, ¶ 16), plainly state in several places that the 180-month period refers to the maximum term of the disability insurance and not the benefit period.  (*See* ECF No. 3-5 at 2; ECF No. 3-6 at 2–3; ECF No. 3-7 at 6.)
[5] Defendant Household refers to itself in its briefs as "Pavonia" because the company underwent a name change since the lawsuit began.   For consistency's sake, the Court will refer to Defendant as "Household" throughout this order.

made pursuant to a revolving loan account," § 46A-1-104, but the law includes enumerated exceptions, including "[t]he sale of insurance by an insurer . . . ." § 46A-1-105. Where the defendant is not a debt collector or creditor of the plaintiff within the definition of the WVCCPA,[6] courts decline to apply the state statute. *See, e.g.*, *Grubb v. Jos. A. Bank Clothiers, Inc.*, No. Civ.A. 2:05-0056, 2005 WL 1378721, at *7 (S.D.W. Va. June 2, 2005) ("There being no credible allegation that defendant became plaintiff's creditor in the transaction, plaintiff has no colorable right to the imposition of a civil penalty under [the WVCCPA]."). Judge Copenhaver concluded in the recent case *Hinkle v. Matthews* that "none of the WVCCPA provisions relied upon [by Hinkle] are applicable to the sale of insurance." No. 2:15-13856, 2016 WL 3945734, at *2–4 (S.D.W. Va. July 19, 2016) (granting defendant's motion for dismissal with regard to plaintiff's WVCCPA claim). *Cf. Kemboi v. Ocwen Loan Servicing, LLC*, Nos. 3:11-CV-36(L), 3:11-CV-37, 2012 WL 2571287, at *9 (N.D.W. Va. July 2, 2012) (granting summary judgment to defendant because plaintiffs' WVCCPA claim relied on defendant acting as a debt collector, which it was not).

Here, Plaintiff secured a credit disability insurance policy from Household. (*See* ECF No. 3-1 at 13, ¶ 1.) Household is an insurance company, (*id.*), and Ms. Wilt's transaction with Household was in connection with but distinct from her mortgage loan from Beneficial. (*See id.*; 14, ¶¶ 6-7.) The Court cannot apply the provisions of the WVCCPA to an insurance company like Household or any entity that does not act as a debt collector. *See Elkins v. Diversified*

---

[6] The WVCCPA defines "debt collector" as "any person or organization engaging directly or indirectly in debt collection." W. Va. Code § 46A-2-122(d). "Creditor" is defined by the WVCCPA as "an institution, the deposits of which are insured by the Federal Deposit Insurance Agency, the National Credit Union Share Insurance Fund, or a subsidiary of such an institution, or a subsidiary of a holding company owning such an institution . . . ." *Id.* § 46A-3-109a(a)(5). The Court notes, however, that this provision cannot be an all-inclusive definition of "creditor," as the provision is "for the purposes of this section only." *Id.*

*Collection Servs., Inc.*, No. 13-cv-00927, 2013 WL 3754830, *1, 4 (S.D.W. Va. July 15, 2013) (holding that the plaintiff "failed to assert . . . any action detailing [Bank of America's] efforts to collect on the alleged debt" and that the plaintiff's contention was no more than a "mere legal conclusion which this Court is entitled to reject . . . and insufficient to state a claim").   Similarly, while Ms. Wilt claims that "Household falsely represented to [her] that she was required to make payments on her mortgage," (*see* ECF No. 3-1 at 17, ¶ 32), like the plaintiff in *Elkins* she has not demonstrated any activity by Household that suggests it is a "debt collector" or "creditor" within the meaning of the WVCCPA.

Plaintiff claims in her response that WVCCPA section 46A-3-109 applies to this case because the section includes the language "credit or life insurance."   The statutory language, however, reveals that the section applies to insurance provided *by the creditor* who receives charges "in connection with a consumer credit sale or a consumer loan."   *See* W. Va. Code § 46A-3-109(a)(2), (b) (emphasis added).   As stated above, Ms. Wilt's creditor in this situation is Beneficial, the company from whom she acquired her mortgage loan.   Household, on the other hand, is an insurer and not a creditor or debt collector as defined within the WVCCPA.   *See* §§ 46A-3-109a(a)(5), 46A-2-122(d).

Thus, the WVCCPA does not apply to the sale of insurance by an insurer, and Plaintiff's claims under the statute are not cognizable.   Accordingly, the Court **DISMISSES** count two.

### C.   Count Three: WVUTPA

Household argues that the WVUTPA does not provide relief because no "misrepresentation and false advertising of insurance policies and insurance applications" occurred.   (*See* ECF No. 4 at 3, 13–14.)   It contends that her allegations of misrepresentation, false advertising, fraud, and

11

unfair practices, are unsubstantiated and do not hold up to the standards set in *Twombly* and *Iqbal*. (*See id.* at 13–14 (citing *Iqbal*, 566 U.S. at 678).)   It states that Ms. Wilt "fails to allege what misrepresentations [Household] made, when or where it made them, and by whom they were made."  (*Id.* at 14.)

For reasons provided below, the Court will not address the merits of the claims brought under the WVUTPA because they are time barred pursuant to the applicable statute of limitations.

### D.   Count Four: Failure to Disclose

Household's motion asserts that no plausible claim has been stated under W. Va. Code R. § 114-14-4.1.  (*See* ECF No. 4 at 2–4.)   Plaintiff alleges that Household failed to disclose important information regarding the insurance contract and actively misled her at the closing. (*See* ECF No. 3-1 at 6, ¶¶ 39–41; ECF No. 7 at 3–7.)

Rule § 114-14-4.1 provides: "No person may knowingly fail to fully disclose to first-party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."   The plaintiffs in *White v. American General Life Insurance Co.* attempted to rely on a similar regulation promulgated by the West Virginia Insurance Commissioner in bringing a WVUTPA claim.   *See* 651 F. Supp. 2d 530, 548–49 (S.D.W. Va. 2009).   The plaintiffs, however, were barred from relying solely on the violation of an insurance regulation to make out a claim.   "Inasmuch as 'a violation of an insurance regulation standing alone does not give rise to a cause of action under West Virginia Code § 33-11-4(9),' . . . plaintiffs' reliance on W. Va. Code R. § 114-14-6.17 in support of their WVUTPA claim is misplaced."   *Id.* at 548 (granting defendant's motion for summary judgment "to the extent plaintiffs base their WVUTPA claim on an alleged violation of W. Va. Code R. § 114-14-6.17").

12

Plaintiff's complaint here does not cite authority giving rise to a cause of action related to the general claim that "Household violated 114 West Virginia C.S.R. 14.4-1 by failing to fully disclose all pertinent benefits, coverage, and other provisions of the insurance contract." (ECF No. 3-1 at 18, ¶ 40.) This is a simple recitation of the state regulation and, by itself, does not suffice to make out a cognizable legal claim. *See White*, 651 F. Supp. 2d at 548–49. Additionally, Plaintiff's response in support of this claim involves a discussion about Household's supposed violation of W. Va. Code R. § 114-6-5.3, (*see* ECF No. 7 at 3–7), but similarly, even if this had been alleged in the complaint, this alone would fail to state a recognized cause of action in West Virginia. *Cf. White*, 651 F. Supp. 2d at 548–49.

Without supporting law or additional facts, the Court finds that Plaintiff's claim that Household failed to disclose what is required under § 114-14-4.1 is not actionable. Thus, the Court **DISMISSES** count four.

### E.   Count Five: Fraud and Misrepresentation

Household further contends that the factual allegations accompanying Ms. Wilt's fraud and misrepresentation claim has not been particularized as required by Federal Rule of Civil Procedure 9(b). (*See* ECF No. 4 at 3–4, 15–17.)

To assert an action for fraud and misrepresentation, the plaintiff must prove three essential elements: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relief upon it and was justified under the circumstances in relying on it; and (3) that he was damaged because he relied upon it." *Romano v. New Eng. Mut. Life Ins. Co.*, 362 S.E.2d 334, 340–41 (W. Va. 1987) (quoting *Horton v. Tyree*, 139 S.E. 737 (W. Va. 1927)). *See also Bridges v. Nationwide Mut. Ins. Co.*, No. 88-2531, 1989

13

WL 100648, at *6 (4th Cir. 1989) (adopting the three *Horton* factors); *Jennings v. Farmers Mut. Ins. Co.*, 687 S.E.2d 574, 579 (W. Va. 2009) (quoting *Lengyel v. Lint*, 280 S.E.2d 66, 69 (W. Va. 1981)). While *Horton* did not require the plaintiff to make any inquiries and allowed him to merely rely on the misrepresentation, *see* 139 S.E. at 739, the United States Supreme Court, like the West Virginia Supreme Court of Appeals in *Jennings*, has since followed the "prevailing view of American common-law courts" and requires "justifiable, but not reasonable, reliance," when deciding the required level of reliance in a common-law fraud action. *See Field v. Mans*, 516 U.S. 59, 73–74 (1995). *See also Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 124–25 (4th Cir. 1990) (citing *James v. Goldberg*, 261 A.2d 753 (Md. 1970)) (paraphrasing dicta from *James* that "the plaintiff had no right to rely upon the false oral representation in the face of the contrary written terms of the lease of which he had knowledge").

When pleading a claim of fraud, Federal Rule of Civil Procedure 9(b) requires the following: "a party must state with particularity, the circumstances constituting fraud . . . ." The particularities must include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bennett v. Skyline Corp.*, 52 F. Supp. 3d 796, 813 (N.D.W. Va. 2014) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

In *Roney v. Gencorp*, this Court did not dismiss the plaintiff's fraud and misrepresentation claim because the plaintiff "provided detailed allegations as to which Defendant engaged in what fraudulent activity, when and where that activity occurred, and what that Defendant allegedly misrepresented." 431 F. Supp. 2d 622, 635 (S.D.W. Va. 2006). The Fourth Circuit has made a point to warn district courts that they should be hesitant in dismissing a complaint under Rule 9(b)

if satisfied "(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has *substantial* prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784 (emphasis added).

Here, Plaintiff states in her complaint that "Household made false and material representations to Ms. Wilt regarding the credit disability policy . . . that if she purchased a credit disability insurance policy, she would never have to make a payment on her mortgage if she became disabled." (ECF No. 3-1 at 18, ¶¶ 43–44.) She claims that "Household also represented . . . that if she became disabled during the mortgage loan term, her mortgage payments would be paid for a period of 180 months." (*Id.* ¶ 45.) Facts at the beginning of her complaint imply that the representations were made by a Household representative "on or about February 9, 2007 . . . at the closing" of her mortgage. (*See id.* at 13, ¶ 1–2.) Plaintiff argues that she "justifiably relied" on those representations "to her detriment" and that, consequently, she "suffered damages." (*Id.* at 45, ¶¶ 46–47.)

Plaintiff's complaint provides a date of when the misrepresentation was made, a general identity of the person who made the misrepresentation, and a short summation of the alleged misrepresentation. (*See* ECF No. 3-1 at 14, ¶ 7.)

However, even if the Court accepted that her allegations were otherwise well pled, it cannot agree that Plaintiff has sufficiently alleged that she justifiably relied on whatever misrepresentations were made in light of the documents provided to her at the closing and upon her application's acceptance. (*See* ECF No. 3-5 at 2; ECF No. 3-6 at 2–3; ECF No. 3-7 at 6 (providing that the insurance's term was 180 months and that the critical benefits period, which would not cover the entire loan amount, was 24 months).) Ms. Wilt had ample notice that

whatever misrepresentation was made at the closing was not consistent with the contract she signed.   (*See* ECF No. 3-6 at 3.)   Perhaps Plaintiff did not read the documents she signed or received.   The Fourth Circuit has noted, with limited exceptions, that "the failure to read a written contract . . . is fatal to a claim of justifiable reliance upon an oral misrepresentation" so as "not to encourage negligence and inattention to one's own interest."   *See Jones v. Jim Walter Homes, Inc.*, No. 89-2926, 1991 WL 49648, at *3 (4th Cir. 1991).   Accordingly, Ms. Wilt has no legal right to rely upon any alleged false oral statements in the face of contrary written terms.[7]   *See Foremost Guar. Corp.*, 910 F.2d at 124–25.

For these reasons, Plaintiff has inadequately pled sufficient facts to state a cause of action for fraud and misrepresentation.   Thus, the Court **DISMISSES** count five.

F.   *Count Six: First-Party Insurance Bad Faith*

Finally, Household claims that Plaintiff's first-party insurance bad faith claim fails both because it is insufficiently pled and because Household made the 24 months of payments as required by its policy, so no bad faith could have occurred.   (*See* ECF No. 4 at 2–4.)

While West Virginia law recognizes an insured first party's right to bring a bad faith claim against his or her insurer under both the WVUTPA and common law, *see Loudin v. Nat'l Liab. & Fire Ins. Co.*, 716 S.E.2d 696, 700 (W. Va. 2011), the Court will not address the merits of the common law bad faith claim because like its WVUTPA counterpart, it is time barred pursuant to the applicable statute of limitations.

---

[7] A more thorough discussion regarding the contents of these documents and their explicit references to the 24-month Critical Period can be found, *supra*, in the Court's analysis of Plaintiff's breach of contract claim.

16

### G.   *Statute of Limitations*

In addition to the grounds raised above, Household argues that claims two, three, and six, are time-barred based on an accrual date of July 26, 2013, when Plaintiff received a letter from Household informing her that her benefits would end after the 24-month Critical Period.   (*See* ECF No. 4 at 2–4.)   This argument affects Plaintiff's causes of actions brought under the WVCCPA, the WVUTPA, and first-party insurance bad faith.   (*See* ECF No. 8 at 7–9.)   The claim alleging a violation of the WVCCPA was disposed of in the discussion above, so the Court will not analyze it again based on the statute of limitations.   Ms. Wilt argues that her claims are not time barred because the statute of limitations was not triggered for her WVUTPA and first-party bad faith claims until she received a final letter terminating her benefits altogether on April 29, 2014.   (*See* ECF No. 7 at 7–10.)

In deciding a motion to dismiss based on the statute of limitations, the Court should only grant the motion if it clearly appears on the face of the complaint that the plaintiff's claims are time-barred.   *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).   In *Goodman*, the Fourth Circuit stated:

> Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, . . . and the burden of establishing the affirmative defense rests on the defendant.   It follows, therefore, that a motion to dismiss filed under Federal Rule of [Civil] Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred.   But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).   This principle only applies, however, if all facts necessary to the affirmative defense "*clearly appear[] on the face of the complaint*."

*Id.* (emphasis added and citations omitted).

Courts analyzing a West Virginia statute of limitations should conduct a five-step analysis in determining whether a cause of action is barred by the statute of limitations. *See Knisely v. Nat'l Better Living Ass'n, Inc.*, No. 3:14-cv-15, 2014 WL 4084517, at *9–10 (N.D.W. Va. Aug. 19, 2014) (citing *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009)). The Court must "identify the applicable statute of limitation." *Dunn*, 689 S.E.2d at 265. Claims brought under the WVUTPA have a one-year statute of limitations. *See Wilt v. State Auto. Mut. Ins. Co.*, 506 S.E.2d 608, 608 (W. Va. 1998). The West Virginia Supreme Court of Appeals used the reasoning in *Wilt* to hold that "the one year statute of limitations . . . applies to a common law bad faith claim." *See Nolan v. Va. Ins. Reciprocal*, 686 S.E.2d 23, 35 (W. Va. 2009).

Second, the Court "should identify when the requisite elements of the cause of action occurred." *Dunn*, 689 S.E.2d at 265. Further, the Court must decide if the discovery rule should apply using the following:

> In tort actions . . . under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a casual relation to the injury.

*Gaither v. City Hosp., Inc.*, 487 S.E.2d 901, 901 (W. Va. 1997) (syllabus point four). The WVUTPA is considered a tort action for this purpose. *See Kenney v. Indep. Order of Foresters*, 744 F.3d 901, 907 (4th Cir. 2014). The discovery rule tolls the statute of limitations "until a claimant knows or by reasonable diligence should know of his claim." *Marple v. Allstate Ins. Co.*, No. 5:10CV3, 2010 WL 3788048, at *3 (N.D.W. Va. Sept. 23, 2010) (citing *Dunn*, 689 S.E.2d at 262 (quoting *Gaither*, 487 S.E.2d at 906)). A plaintiff who knows of facts that place him or her

18

on notice of a possible duty of care breach "has an affirmative duty to further and fully investigate the facts surrounding that potential breach." *McCoy v. Miller*, 578 S.E.2d 355, 359 (W. Va. 2003).

Fourth, if the plaintiff does not benefit from the discovery rule, then the Court must look at "whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action." *See Dunn*, 689 S.E.2d at 265. Lastly, the Court must inquire whether "some other tolling doctrine" affects the statute of limitations period. *See id.*

In *Parsons v. Standard Insurance Co.*, the plaintiff's WVUTPA and common law bad faith claims were asserted as a result of the defendant insurance company's "denial of coverage and cessation of any further benefit payments, both of which occurred on February 13, 2014." No. 1:16CV20, 2016 WL 2599143, at *2-3 (N.D.W. Va. May 5, 2016). The plaintiff was "put on notice of the Defendants' [denial] . . . when he received the February 13, 2014 letter." *Id.* at *2. Therefore, the Court applied the discovery rule and concluded that the cause of action accrued the day he received the letter. *See id.* It further held that it was "clear from the face of Parsons' complaint that he was aware of the denial of coverage and cessation of benefit payments when he received the defendants' denial letter . . . The Court, therefore, conclude[d] that the statute of limitations began to run on that date." *Id.* at *3 (applying the one-year statute of limitations applicable to WVUTPA and common law bad faith claims).

Here, the claims' requisite elements occurred between February 9, 2007, when Ms. Wilt first applied for the insurance, and April 24, 2014, when her insurance benefits ceased. (*See* ECF No. 3-1 at 13, ¶ 1; 14, ¶ 12.) Defendant's representative made the alleged misrepresentation regarding the length of the insurance coverage the day she enrolled in the credit disability

insurance.  (*See id.* ¶ 7.)  Plaintiff then received a letter in the mail on July 26, 2013, "stating that her benefits would terminate on April 24, 2014 . . . ."  (*Id.* ¶ 12.)  She claims to have learned through this letter that Household's salesperson's statements from 2007 were false.  (*See id.*)  Plaintiff filed this action in state court on November 21, 2014.

Applying the discovery rule to Plaintiff's claims under WVUTPA § 33-11-4(1)(a), (2),[8] (9)(a), (11), and her first-party insurance bad faith claim, Ms. Wilt knew of the alleged WVUTPA and first-party insurance bad faith violations when she read the July 26, 2013, letter mailed to her restating that the insurance policy benefits coverage only lasted 24 months.  (*See* ECF No. 3-1 at 2, ¶ 12.)  This is very similar to the letter received by the plaintiff in *Parsons* notifying the insured that disability insurance payments would cease.  There, the cause of action accrued and the statute of limitations began to run on the date he received the letter.  Likewise, the one-year statute of limitations on the present claims began to run on July 26, 2013.[9]

Plaintiff's WVUTPA and first-party insurance bad faith claims are subject to a one-year statute of limitations period and began running, at the latest, July 26, 2013, when Plaintiff admits to being aware of facts that would lead to the relevant causes of action under the WVUTPA and common law.

There are no alleged facts leading the Court to believe that Household "fraudulently concealed facts that prevented [Ms. Wilt] from discovering or pursuing the cause of action."  *See*

---

[8] Though the Court analyzes this claim for timeliness, the Court notes that the complaint is devoid of allegations concerning when, if at all, the Plaintiff saw an advertisement that would trigger § 33–11–4(2).  Regardless, Ms. Wilt knew or should have known that any advertisements about the policy were "untrue, deceptive or misleading" when she discovered through the certificate mailed on March 6, 2007, or as late as the notice letter's arrival on July 26, 2013, that the policy's benefits did not conform with what had been represented about the policy.

[9] The remaining claim under § 33-11-4(9)(n) prohibits a person from establishing a general business practice that "[f]ail[s]to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."  This claim, which simply restates the statutory language, is insufficiently pled under *Iqbal* and *Twombly*. *See* 550 U.S. at 554–55.

*Dunn*, 689 S.E.2d at 265.   As stated above, the policy documents provided to her both clearly and unambiguously included information that would lead a reasonably prudent person to understand that the policy benefits only lasted 24 months for a single disability claim.   Thus, fraudulent concealment does not apply.   Lastly, Plaintiff has not referenced "some other tolling doctrine" in her complaint or response to Household's motion that would affect the statute of limitations period, so the last *Dunn* element does not apply.   *See id.*

In light of the *Dunn* analysis, the one-year statute of limitations bars Plaintiff's claims brought under the WVUPTA and common law first-party insurance bad faith.   The statute of limitations began to run no later than July 26, 2013.   Ms. Wilt filed this action on November 21, 2014—more than one year after July 26, 2013.   (*See* ECF No. 3-1, at 13.)   These facts are clear on the face of Plaintiff's complaint.   Accordingly, the Court grants Household's motion on counts two, three, and six, and **DISMISSES** those counts as untimely.

## *IV.   CONCLUSION*

For the reasons stated above, the Court **LIFTS** the stay in this case, **GRANTS** Household's Motion to Dismiss (ECF No. 3), and **DENIES** as moot Defendant Beneficial's Motion to Compel Arbitration (ECF No. 34).   Further, the Court **DISMISSES** this case, and **DIRECTS** the Clerk to remove this action from the Court's docket.

21

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 30, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE